UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EDWARD MONTELONGO | CIVIL ACTION NO. 25-555 |
| VERSUS | JUDGE ELDON E. FALLON |
| BAYER CROPSCIENCE, INC., ET AL. | MAG. JUDGE EVA J. DOSSIER |

<u>ORDER AND REASONS</u>

The Court has before it Defendant Huntington Ingalls Incorporated's (formerly, "Avondale") Motion seeking to partially exclude at trial the testimony of Plaintiff Edward Montelongo's retained industrial hygiene expert Gerard Baril, CIH. R. Doc. 182. Plaintiff opposes the Motion, R. Doc. 201, and Shell USA, Inc. filed a reply memorandum in its support, R. Doc. 215. Having considered the briefing in light of the record facts and applicable law, the Court will DENY the Motion for the following reasons.

## I.    BACKGROUND & PRESENT MOTION

Plaintiff filed the above-captioned action against multiple defendants, including Avondale, seeking damages for his alleged exposure to asbestos and subsequent development of asbestos-related health problems. R. Doc. 1-1, 71. With trial approaching, Avondale asks the Court to preclude Plaintiff's industrial hygiene expert, Baril, from opining at trial that Plaintiff's work with and around asbestos-containing products contaminated his home because Plaintiff carried asbestos fibers home with him on his clothing, leading to continued asbestos exposure long after Plaintiff ceased that work. R. Doc. 182-1 at 1. Avondale argues that this conclusion rests entirely on Baril's speculation and personal beliefs, unsupported by testing or peer review, and accordingly should be

1

excluded from use at trial under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Id.* at 2. Plaintiff opposes, asserting that Baril's opinion is based on at least twelve studies, including those published in peer-reviewed literature and by government agencies, that support his conclusion that such home contamination and resultant additional asbestos exposure can occur. R. Doc. 201 at 7–17.

## II.    APPLICABLE LAW

District courts have the discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert*, the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. The Supreme Court extended *Daubert*'s applicability to experts who testify based on technical and specialized knowledge, noting that *Daubert*'s gatekeeping requirement to ensure the reliability and relevancy of expert testimony "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Rule 702 of the Federal Rules of Evidence sets forth the framework governing the admissibility of expert testimony. "The object of Rule 702 is to protect juries from unreliable and irrelevant expert testimony." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

First, Rule 702 requires that an expert must be properly qualified. "[G]enerally, however, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications." *Urda v. Valmont Indus., Inc.*, 561 F. Supp. 3d 632, 638 (M.D. La. 2021).

Second, an expert's testimony must be reliable. The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93; *Kumho Tire*, 526 U.S. at 152–53. In *Daubert*, the Supreme Court listed several non-exclusive factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Daubert*, 509 U.S. at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150. In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

3

Third, expert testimony must also be relevant. Testimony is relevant if the expert's reasoning and methodology "fits" the facts of the case and the testimony will assist the trier of fact to understand the evidence. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003).

### III.    DISCUSSION

In this case, Avondale does not contest that Baril is qualified to testify as an expert. Rather, Avondale challenges the reliability of Baril's "contaminated house" opinions, arguing they are "scientifically unreliable, methodologically unsupported, and inadmissible because they do not follow any accepted procedure, standard, or analytical framework recognized in industrial hygiene for determining whether a residence is contaminated with asbestos." R. Doc. 182-1 at 1. However, as Plaintiff argues, Baril "cites to numerous references which support his opinions, including published, peer reviewed literature, publications by governmental and scientific organizations, as well as occupational exposure standards and regulations." R. Doc. 201 at 1.

It is "the role of the adversarial system, not the court, to highlight weak evidence." *Primrose Op. Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The fact that opposing parties do not agree with the facts relied upon by an expert or his interpretation of those facts does not render his opinions unreliable; challenges related to the basis of an expert's opinions are thus best suited for cross-examination, not exclusion under Rule 702. *Delta Towing, LLC v. Justrabo*, No. 08-3651, 2009 WL 3763868, at *4

(E.D. La. Nov. 9, 2009). Baril's testimony is sufficiently reliable to satisfy this Court's gatekeeping function under *Daubert*.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons;

**IT IS ORDERED** that Avondale's Motion, R. Doc. 182, is **DENIED**.

New Orleans, Louisiana, this 19th day of May, 2026.

 

United States District Judge